UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SONIK MANASERIAN,<br><br>Petitioner,<br><br>v.<br><br>FERETI SEMAIA, Warden, et al.,<br><br>Respondents. | CASE NO. 5:25-cv-03542-RGK-MAA<br><br>**ORDER GRANTING PETITION FOR A WRIT OF HABEAS CORPUS (ECF NO. 1)** |

On December 24, 2025, Petitioner Sonik Manaserian ("Petitioner"), represented by counsel, filed a Petition for a Writ of Habeas Corpus ("Petition") against Fereti Semaia, Warden of the Adelanto ICE Processing Center; Ernesto Santacruz, Jr., Acting Field Office Director, United States Immigration and Customs Enforcement ("ICE"); Todd Lyons, Acting Director, ICE; Kristi Noem, Secretary, U.S. Department of Homeland Security ("DHS"); and Pamela Bondi, Attorney General of the United States ("Respondents"). (Pet., ECF No. 1.) On January 15, 2026, Respondents filed an Answer to the Petition which states that, "[a]t this time, Respondents do not have an opposition argument to present" ("Answer"). (ECF No. 6.) On January 16, 2026, Petitioner filed her Traverse. (ECF No. 7.)

///

This case was assigned to the undersigned district judge and referred to Magistrate Judge Maria Audero for preparation of a report and recommendation on December 24, 2025. (ECF No. 5.) On January 5, 2026, Judge Audero set an expedited briefing schedule on the merits of the Petition and, to preserve the Court's jurisdiction, enjoined Respondents from transferring, relocating, or removing Petitioner outside of the Central District of California pending final resolution of this case or further order of the Court. (ECF No. 4.) Having received Respondents' statement that they are unable to present any argument in opposition to the Petition, however, the Court VACATES the reference[1] and, for the reasons set forth below, GRANTS the Petition, which the Court finds appropriate for resolution without oral argument. See Fed. R. Civ. P. 78; C.D. Cal. R. 7-15.

## I.   STATEMENT OF FACTS

Petitioner is a 70-year-old Iranian woman of Armenian ethnicity who is detained at the Adelanto ICE Processing Center in Adelanto, California. (Pet. ¶ 1.[2]) Petitioner entered the United States in May of 1999 and has resided here ever since. (*Id.* at ¶ 28.) She is a member of the Bahai faith, who escaped with her family from religious persecution in her native country of Iran. (*Id.* at ¶ 31.) She applied for asylum, derivative to her husband's application for asylum in the United States. (*Id.*) In October of 1999, an Immigration Judge ("IJ") entered a removal order against Petitioner. (*Id.* at ¶ 2.) However, Petitioner was not removed and was allowed to remain in the United States. (*Id.* at ¶ 3.) In October of 2008, Petitioner

---

[1] Pursuant to 28 U.S.C. § 636(b)(1), there is a fourteen-day period after service with a magistrate judge's report and recommendation during which the parties may file and serve objections to the report. In light of the relief sought and Respondents' failure to oppose the granting of such relief, this additional delay is unnecessary and would be contrary to the interests of justice.

[2] Pinpoint citations refer to paragraphs and, where none, to the page numbers in the CM/ECF-generated headers of filed documents.

2

was arrested by ICE, placed under an Order of Supervision and Unsupervised Parole ("OSUP"), and released again. (*Id.* at ¶ 4.) DHS issued Petitioner an employment authorization document. (*Id.* at ¶ 11.) Petitioner has complied with every requirement and check-in requested by ICE. (*Id.* at ¶¶ 4, 38.) Petitioner did not violate any conditions of release. (*Id.* at ¶ 8.)

On November 26, 2025, Petitioner attended another ICE OSUP in-person check-in along with her two daughters. (*Id.* at ¶ 39.) ICE officers arrested Petitioner at the scheduled check-in, without any notice, without a warrant, 26 years after she was ordered removed and 17 years after the issuance of the OSUP. (*Id.* at ¶¶ 5, 39.) Petitioner's assigned deportation officer acknowledged that ICE had not tried to obtain travel documents that would allow Petitioner to be removed to Iran prior to her arrest. (*Id.* at ¶¶ 51, 55.) The United States does not have any diplomatic relations with Iran. (*Id.* at ¶ 52.) There is no likelihood that removal will occur in the reasonably foreseeable future. (*Id.* at ¶¶ 8–9, 53, 55.) In arresting Petitioner, ICE did not comply with its own regulations. (*Id.* at ¶ 10.) Petitioner has a number of medical issues which cannot be addressed in the detention facility where she is located. (*Id.* at ¶ 14.) While transferring Petitioner from a detention facility in downtown Los Angeles to Adelanto, ICE lost her medication. (*Id.* at ¶ 42.) Petitioner was not allowed to attend a prescheduled medical appointment. (*Id.* at ¶ 44.)

Petitioner's husband, Zhilbert Khachikian, who was the principal in their family's immigration removal proceedings and application for asylum, also was detained by ICE in November 2025. (Trav. 2.) Mr. Khachikian, whose circumstances appear similar to his wife's, was granted habeas relief on January 8, 2026. *Khachikian v. Casey*, No. 25CV3737-GPC(JLB), 2026 WL 63633, at *1 (S.D. Cal. Jan. 8, 2026).

///

///

## II. PETITIONER'S CLAIMS

In her Petition, Petitioner asserts six claims for relief: (1) unlawful revocation of release; (2) violation of procedures for revocation of release; (3) unlawful detention where removal is not reasonably foreseeable; (4) unlawful detention without individualized determination of danger or flight risk; (5) unlawful removal to a third country; and (6) declaratory judgment. (*Id.* at ¶¶ 64–102.) She seeks, *inter alia*, a writ of habeas corpus directing Respondents to release her from custody, declaratory relief that Respondents have violated her rights, and injunctive relief preventing Respondents from: (1) revoking Petitioner's release unless they have individualized evidence that her removal is reasonably foreseeable; (2) revoking Petitioner's release without providing her a determination by an impartial adjudicator that her detention is justified based on danger or flight risk, which cannot be sufficiently addressed by alternative conditions of release or supervision, at which hearing Respondents will bear the burden of proof of demonstrating that Petitioner is a flight risk or a danger to the community; (3) removing Petitioner to a third country without sufficient notice and opportunity to demonstrate that she faces a specific risk of torture or persecution in that third country; and (4) taking retaliatory or otherwise unlawful adverse action against Petitioner on account of Petitioner' filing or maintaining this action, or for the purpose of circumventing or undermining this Court's orders, including but not limited to the use of unnecessary delay, bad-faith denials or revocations of release, and denying the right to employment authorization documents. (*Id.* at 19–20.) Petitioner also seeks attorney's fees and asks the Court to retain jurisdiction over this action to enforce its orders. (*Id.* at 20.)

## III. LEGAL STANDARD

Writs of habeas corpus may be granted by the federal courts to noncitizens in the custody of immigration authorities. 28 U.S.C. § 2241(c)(3) ("The writ of

habeas corpus" extends to individuals "in custody in violation of the Constitution or laws or treaties of the United States."); *Doe v. Garland*, 109 F.4th 1188, 1194 (9th Cir. 2024) (holding that petition challenging alien's detention without bond hearing fell within the "core of habeas"). The writ is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004).

The Due Process Clause prohibits deprivations of life, liberty, and property without due process of law. U.S. Const. amend. V. "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). The Supreme Court has held explicitly "that the Due Process Clause protects an alien subject to a final order of deportation, though the nature of that protection may vary depending upon status and circumstance." *Id.* at 693–94 (internal citation omitted). "'It is well established that the Fifth Amendment entitles aliens to due process of law' in the context of removal proceedings." *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. The government therefore may detain individuals outside of the criminal context only "in certain special and 'narrow' nonpunitive 'circumstances.'" *Id.* (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)).

///

///

///

## IV.   DISCUSSION

The detention of individuals subject to a final order of removal is governed by 8 U.S.C. § 1231(a) ("Section 1231(a)").  This statute states that, "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period').'' 8 U.S.C. § 1231(a)(1)(A).  Detention is authorized during the removal period. *Id.* at § 1231(a)(2)(A).  "If the alien does not leave or is not removed within the removal period, the alien, pending removal, shall be subject to supervision under regulations prescribed by the Attorney General." *Id.* at § 1231(a)(3).

Under Section 1231(a)(6), certain aliens who have been ordered removed may be detained longer than 90 days, including those who are:

- inadmissible under 8 U.S.C. § 1182;
- removable under 8 U.S.C. § 1227(a)(1)(C);
- removable under 8 U.S.C. § 1227(a)(2);
- removable under 8 U.S.C. § 1227(a)(4); or
- been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal.

8 U.S.C. § 1231(a)(6).  Even for these aliens, however, when "removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Zadvydas*, 533 U.S. at 699.  At that point, a detained alien must be released, subject to "any of the various forms of supervised release that are appropriate in the circumstances." *Id.* at 699–700.  Otherwise, a "statute permitting indefinite detention of an alien would raise a serious constitutional problem." *Id.* at 690.

The revocation of release of an alien subject to a final order of removal who has been released from custody is governed by 8 C.F.R. §§ 241.13(i) and 241.4(*l*), "which require that 'upon revocation' the alien 'be notified of the reasons for revocation of his or her release' and given 'an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to

respond to the reasons for revocation stated in the notification.'" *Trifonov v. Noem*, No. 5:25-CV-03460-DOC-JDE, 2025 WL 3763371, at *2 (C.D. Cal. Dec. 22, 2025) (quoting 8 C.F.R. §§ 241.13(i)(3) and 241.4(l)). "Both 8 C.F.R. § 241.13 and 8 C.F.R. § 241.4 were intended to provide due process protections to noncitizens following the removal period as they are considered for continued detention, release, and then possible revocation of release." *Id.* (quoting *Constantinovici v. Bondi*, No. 3:25-cv-02405-RBM-AHG, 2025 WL 2898985, at *5 (S.D. Cal. Oct. 10, 2025) (internal quotations omitted)).; *see also Castillo-Hernandez v. Bondi*, No. EDCV 25-2662 JGB (MAAx), 2025 WL 3190887, at *4 (C.D. Cal. Oct. 28, 2025) ("Following the Supreme Court's decision in *Zadvydas v. Davis*, ICE issued 8 C.F.R. § 241.13 to govern custody determinations for noncitizens subject to a final order of removal whose removal period has expired and where there is not a significant likelihood of removal." (citing *Continued Detention of Aliens Subject to Final Orders of Removal*, 66 Fed. Reg. 56967 (Nov. 14, 2001))).

Specifically, 8 C.F.R. § 241.13(i) permits release to be revoked for only two reasons: (1) violation of the conditions of release or (2) because, "on account of changed circumstances, the Service determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2). Revocation procedures are as follows:

> Upon revocation, the alien will be notified of the reasons for revocation of his or her release. The Service will conduct an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification. The alien may submit any evidence or information that he or she believes shows there is no significant likelihood he or she be removed in the reasonably foreseeable future, or that he or she has not violated the order of supervision. The revocation custody review will include an evaluation of any contested facts relevant to the revocation and a determination whether the facts as determined warrant revocation and further denial of release.

8 C.F.R. § 241.13(i)(3).

Petitioner asserts that ICE was required to comply with 8 C.F.R. § 241.13(i) in seeking to revoke her release, but did not do so. She argues that ICE unlawfully revoked her release in violation of 8 C.F.R. § 241.13(i)(2), because she had not violated the conditions of her release and there was no evidence that Petitioner could be removed to Iran in the reasonably foreseeable future. (Pet. ¶¶ 64–67.) She also argues that her release was revoked without complying with the procedures set forth in 8 C.F.R. § 241.13(i)(3), as she was detained without notice, was not given any explanation or reason for her detention, and was not provided with an interview. (Pet. ¶¶ 68–72.)

Respondents do not contest either of these claims—or, indeed, any of Petitioner's other claims. Respondents' Answer to the Petition consists of three sentences, two of which recite the procedural history of this case. (Ans. 2.) The remaining sentence reads, in full, "[a]t this time, Respondents do not have an opposition argument to present." (*Id.*) They have not denied or contested any of the factual allegations in the Petition. They have not offered any additional facts or defenses. They have not argued that different statutes or regulations should govern this case. They have not lodged any relevant documents, despite being ordered to do so. (ECF No. 4.)

Thus, it appears that Respondents arrested a chronically ill, 70-year-old woman, who came to this country to avoid religious persecution and applied for asylum, who has lived here peacefully for 26 years and complied with all check-in requirements and other conditions of release, who has no known criminal record and poses no threat to anyone, without notice or the process required by their own regulations and without any plan for removing her from this country, then kept her in detention for months without sufficient medical care—and they do not have *any* argument to offer to even try to justify these actions. Further, having acknowledged that they have no opposition to present to Petitioner's habeas petition, have they

voluntarily released her?  No.  Thus, Petitioner remains in custody, and her counsel, and the Court, are required to expend resources and effort to address a matter that Respondents either cannot be bothered to defend or realize is indefensible.

Since the undisputed allegations and the only evidence presented reflect that Respondents violated their own regulations and detained Petitioner without any evidence of changed circumstances and without following the required procedures, habeas relief is warranted.  *See Khachikian*, 2026 WL 63633, at *8 (granting habeas petition after finding that ICE violated 8 C.F.R. §§ 241.13(i)(2) and (3)).  Further, since Respondents have expressly presented no opposition to any of the relief sought by Petitioner in the Petition, the Court deems this as consent to the granting of all such relief.

## V.    CONCLUSION

For the reasons discussed above, the Court GRANTS the Petition.  IT IS HEREBY ORDERED THAT:

1. Respondents must release Petitioner from custody immediately and must file a notice of compliance with this order, notifying the Court that Petitioner has been released, no later than three calendar days from the date of this order.
2. Respondents are ENJOINED from:
    a. re-detaining Petitioner unless they have individualized evidence that her removal is reasonably foreseeable;
    b. re-detaining Petitioner without providing her a determination by an impartial adjudicator that her detention is justified based on danger or flight risk, which cannot be sufficiently addressed by alternative conditions of release or supervision, at which hearing Respondents will bear the burden of proof of demonstrating that Petitioner is a flight risk or a danger to the community;

///

    c. removing Petitioner to a third country without sufficient notice and opportunity to demonstrate that she faces a specific risk of torture or persecution in that third country; and

    d. taking retaliatory or otherwise unlawful adverse action against Petitioner on account of Petitioner' filing or maintaining this action, or for the purpose of circumventing or undermining this Court's orders, including but not limited to the use of unnecessary delay, bad-faith denials or revocations of release, and denying the right to employment authorization documents.

3. Petitioner is the prevailing party in this action and may seek an award of reasonable attorneys' fees and costs as provided in the Local Rules of this Court; and

4. The Court retains jurisdiction over this matter for the limited purpose of (a) enforcing this Court's orders herein, ensuring Respondents' timely and good-faith compliance with such orders, and (b) adjudicating any issues arising from Respondents' actions in implementing this Court's orders, including any alleged retaliatory or otherwise unlawful adverse actions taken against Petitioner.

DATED: January 23, 2026

                                                   R. GARY KLAUSNER
                                        UNITED STATES DISTRICT JUDGE

Presented by:

MARIA A. AUDERO
UNITED STATES MAGISTRATE JUDGE